UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 24-62452-CIV-DIMITROULEAS/HUNT

SOKA GAKKAI INTERNATIONAL-USA,
a California non-profit religious corporation,
and FLORIDA NATURE AND CULTURE
CENTER, LLC, a Florida limited liability
company,

                           Plaintiffs,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS, and COLONEL BRANDON
L. BOWMAN, District Commander, Army
Corps of Engineers, Jacksonville Office,
In his official capacity,

                           Defendants.
_____/

## REPORT AND RECOMMENDATIONS

This matter is before this Court on Plaintiffs' Emergency Motion for a Preliminary Injunction ("Motion"). ECF No. 10. The Honorable William P. Dimitrouleas referred this Motion to the undersigned United States Magistrate Judge. ECF No. 11; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. The undersigned heard argument on the preliminary injunction on January 30, 2025. Upon thorough and careful review of the Motion, the response, the applicable law, argument of counsel at the hearing, and being otherwise fully advised in the premises, the undersigned RECOMMENDS Plaintiffs' motion be denied.

**Background**

Plaintiffs are a religious organization that has practiced a form of Buddhism at a religious retreat in the Everglades for more than thirty years.  Plaintiffs allege that, in enacting certain parts of Defendants' Comprehensive Everglades Restoration Program ("CERP"), Defendants committed violations of both the National Environmental Policy Act ("NEPA") and the Religious Freedom and Restoration Act ("RFRA").  Plaintiffs specifically allege violations stemming from the so-called "C-11 Impoundment Project" that seeks to create a water impoundment area near their retreat, which is due to start within days.  Plaintiffs contend that Defendants have failed to do the required due diligence in creating and implementing the project.

Plaintiffs currently seek a preliminary injunction halting the project's imminent start, arguing that the relief is necessary because their religiously and spiritually significant Property, which is critical to their religious organization, is under threat by Defendants' project.  Plaintiffs claim the project will likely be massively disruptive given the project's needs and scope, requiring the use of loud heavy machinery as well as the use of explosives to aid excavation.  Plaintiffs argue that the project, currently expected to last for at least nine years, threatens to render the entire Property unusable for religious exercise.

**Legal Standard**

To receive a preliminary injunction, Plaintiffs must clearly establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the

defendant; and (4) that the injunction will not disserve the public interest." *Keister v. Bell*, 879 F.3d 1282, 1287–88 (11th Cir. 2018).

## Discussion

Plaintiffs allege that irreparable harm will come if the project is allowed to proceed due to both the infringement upon their right to religious exercise and the property damage caused by the disruption. Without an injunction, the impending "bureaucratic steamroller," will allow the project to bulldoze its way to completion, according to Plaintiffs. Plaintiffs argue that pausing the project, which has been in the works for almost twenty years, will result in no harm to Defendants given the project's long gestation period. Plaintiffs also contend that the public interest is served by proper religious and environmental protections.

Specifically, Plaintiff alleges the following harms will befall them absent the issuance of an injunction:

> a. wildlife intrusions that increase the risk of dangerous animal encounters and animal-to-human disease transmission;
> b. destructive vibrations caused from both construction and operation that pose risks to the Property's facilities and artifacts;
> c. decreased water quality, changes to groundwater levels and other negative hydrological effects;
> d. decreased air quality due to dust, particles, emissions, and noxious odors;
> e. significant increased noise levels from both construction and operation that could be more than eight times louder than the current ambient noise level on the Property; and
> f. adverse aesthetics.

ECF No. 10 at 4.

Plaintiffs complain that these adverse impacts will render the Property functionally useless for its intended purpose as a religious retreat center. As Plaintiffs argue "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable harm." *Id.* at 15 (quoting *Elrod v. Burns*, 427 U.S. 437, 373 (1976)). Therefore, Plaintiffs argue, the project must be stopped.

In making their argument, Plaintiffs rely heavily on the affidavit of John James Goldasich, an expert hired by Plaintiffs to evaluate the project's threatened impacts to the Property. ECF No. 10-3 at 1. As pertains to the clearing stage currently at issue, Goldasich acknowledged that the contract governing the clearing included the requirements of a "Noise Mitigation Plan, Accident Prevention Plan, Contractor Quality Control Plan, Mobilization and Demobilization Plan, Traffic Control Plan, Environmental Protection Plan, Solid Waste Management, among others," for Defendants' review and approval. ECF No. 10-3 at *7. However, in his assessment, the contracted company would not be able to adequately address Plaintiffs' concerns given the tight deadlines imposed by the contract. *Id.*

Defendants respond that there are several reasons the Court should deny the preliminary injunction. First and foremost,[1] Defendants argue that there is no imminent threat or danger of injury in this case. Defendants point out that the project will engage in nothing but land clearing until 2026 at the earliest, and that Plaintiffs' concerns have been taken into account and mitigated.

---

[1] Defendants additionally argue that there is no substantial likelihood of success because the case itself is untimely, in that this project has been ongoing since 2012, and thus the applicable statute of limitations has passed. Defendants contend the issue is likely also barred by the doctrine of laches. Defendants additionally argue that the obligations have been appropriately fulfilled, that Plaintiffs' religious beliefs will not be unduly burdened, and that the balance of equities favors the Defendants. Given the dispositive importance of Plaintiffs' imminent injury argument and the urgent nature of Plaintiffs' emergency motion, the Court does not address Defendants' additional arguments.
.

Defendants point to the preliminary nature of the work being done over the next year, as well as numerous steps that have been taken to mitigate potential impacts of the clearing process.  *See* ECF No. 14-2, Declaration of Lisa M. Ingram (outlining mitigation efforts).  Although Defendants acknowledged that there may indeed be some noise and dust, they have put in requirements that the noise level be kept below the levels required by Weston, the city in which the Property is located.  Additionally, Defendants have required the use of sound barriers and wildlife fencing, as well as included specifics as to how the debris can be burned and disposed so as to reduce particulates.  Importantly, Defendants have imposed a strict schedule on the work that allows it to be done only Monday through Friday, ceasing each day at 5:30 p.m.  Defendants also observed that Plaintiffs' own retreat schedule for at least 2025 shows the retreat's activities generally begin Friday evenings and run only until Sunday, mostly outside of Defendants' working hours.  *See* ECF No. 10-2 at *13-*15.

In response to Defendants' argument, Plaintiffs at the hearing referred to Defendants' mitigation efforts as "a joke" and "mere band-aids," suggested that the efforts would fail to actually mitigate any of Plaintiffs' concerns, and argued that it would be an undue burden both to the staff and Plaintiffs themselves to require them to maintain a weekends-only schedule.  Plaintiffs also raised concerns that once work is started, Defendants would be in a stronger position to argue that any equity analysis would tip in their favor, despite their mitigation efforts' failure.

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni*

5

*Ass'n, Inc.*, No. 22-14257, 2023 WL 3704912, at *3 (11th Cir. May 30, 2023) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). The undersigned notes that a showing of irreparable injury is "'the sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990)). Additionally, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Id. at* 1176–77 (quoting *City of Jacksonville,* 896 F.2d at 1285).

And therein lies the difficulty for Plaintiffs. Although Plaintiffs' concerns are undoubtedly sincere, they offered little more than speculation that the parade of horribles suggested would actually occur, or even that they are likely to do so. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."). Defendants have outlined specific efforts they put into place to alleviate many of the issues that Plaintiffs have raised. In response, Plaintiffs have essentially argued that they do not believe those efforts will be worthwhile.[2]

---

[2] With respect to Plaintiffs' "bureaucratic steamroller" argument, the undersigned recognizes that this can be a legitimate fear in cases involving a large government agency. But the fear is overstated in this case. Plaintiffs have already begun the process of potentially stopping the project by filing this action and requesting injunctive relief. Defendants acknowledge, as they must, that they would stop work on the project if ordered to do so by the District Court. The immediate anticipated work on the project is simply clearing of land described by Defendants as "very low environmental quality Everglades habitat filled with an impenetrable exotic/invasive forest which provides little to no food or habitat for native wildlife." ECF No. 14 at 9 and Ex. E. If Plaintiffs ultimately prevail in this lawsuit—a possibility about which the undersigned makes no finding and expresses no opinion—this work will stop. Some money will have been spent, and some land will have been cleared. But no unstoppable momentum will be established. The Corps of Engineers will not be crossing the Rubicon, only a drainage canal.

6

This is simply not enough under the preliminary injunction standard. Indeed, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* Further, the breadth of the injunction proposed by Plaintiffs, namely, the cessation of all work on the C-11 project, augurs against granting the relief sought given the speculative nature of the injuries claimed. *See Tang v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A,* No. 21-14431-CIV-CANNON, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022) ("[I]n light of the extreme breadth and severity of the proposed asset freeze—combined with the speculative and generalized nature of the showing of alleged irreparable injury—Plaintiff has not met its burden to warrant that aspect of the relief sought.").

In short, as of now, Plaintiffs have not met their burden to justify the extraordinary remedy requested. Plaintiffs' Motion should therefore be denied.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully RECOMMENDS that Plaintiffs' Emergency Motion for Preliminary Injunction, ECF No. 10, be DENIED.

Within one (1) business day after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Any response shall be filed within one (1) business day of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual

and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 31st day of January 2025.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable William P. Dimitrouleas
All counsel of record