**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
**Case No. 24-cv-62452**
**Judge Dimitrouleas**
**Magistrate Judge Hunt**

| | |
|---|---|
| SOKA GAKKAI INTERNATIONAL-USA, a California non-profit religious corporation, and FLORIDA NATURE AND CULTURE CENTER, LLC, a Florida limited liability company, | ) ) ) ) ) ) |
|      Plaintiffs | ) ) |
| v. | ) ) |
| UNITED STATES ARMY CORPS OF ENGINEERS, COLONEL BRANDON L. BOWMAN, District Commander, Army Corps of Engineers, Jacksonville Office, in his official capacity, | ) ) ) ) ) ) |
|      Defendants | ) ) |

---

## DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
U.S. Department of Justice
Environment and Natural Resources Division

Peter Kryn Dykema
Devon Lehman McCune
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section

Attorneys for Defendants

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND.................................................................................................1

    A.    The Comprehensive Everglades Restoration Plan.................................................1

    B.    The History of The Broward County Water Preservation Areas Project................2

    C.    The Purpose and Design of The BCWPA .............................................................4

    D.    Plaintiffs' Lawsuit..................................................................................................4

ARGUMENT ..........................................................................................................................5

    A.    Standard of Review................................................................................................6

    B.    Plaintiffs' 2007/2012 NEPA Claims are Time-Barred .........................................7

        1.    The 2012 ROD meets the two-part test for reviewable final agency action ...................................................................................................8

        2.    Plaintiffs' claim accrued with their alleged procedural injury in 2012.......9

        3.    The Corps' EIS and ROD were complete in 2012, and Plaintiffs were fully aware of their contents and conclusions at that time .............11

        4.    Plaintiffs' allegations concerning the 2023 MFR cannot salvage Count 1..................................................................................................14

    C.    Plaintiffs' RFRA Claim Should be Dismissed. ..................................................14

        1.    The Corps is not burdening Plaintiffs' exercise of religion.....................15

        2.    Plaintiffs' RFRA claim is time-barred......................................................17

    D.    Plaintiffs' Counts 1 and 3 are Barred by Laches .................................................18

CONCLUSION......................................................................................................................19

LIST OF EXHIBITS .............................................................................................................20

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Sadun v. DCFS,*
   No. 08 C 4802, 2011 WL 1378638 (N.D. Ill. Apr. 11, 2011) ..................................................17

*Am. United Life Ins. Co. v. Martinez,*
   480 F.3d 1043 (11th Cir. 2007) .......................................................................................6

*Apache Stronghold v. United States,*
   101 F.4th 1036 (9th Cir. 2024) .......................................................................................16

*Apache Survival Coal. v. United States,*
   21 F.3d 895 (9th Cir. 1994) ...........................................................................................18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................................................6

*Bennett v. Spear,*
   520 U.S. 154 (1997) ....................................................................................................9

*Bowen v. Roy,*
   476 U.S. 693 (1986) ...................................................................................................15

*Bowman v. Wathen,*
   42 U.S. 189 (1843) ....................................................................................................18

*Burkman v. Bureau of Prisons,*
   No. 3:23-CV-506 (JAM), 2024 WL 4135798 (D. Conn. Sept. 10, 2024)..............................17

*Cal. Valley Miwok Tribe v. United States,*
   197 F. App'x 678 (9th Cir. 2006) ...................................................................................11

*Capua v. Air Europa Lineas Aereas S.A. Inc.,*
   No. 20-CV-61438-RAR, 2021 WL 965500 (S.D. Fla. Mar. 15, 2021) ..................................13

*Chance v. Zinke,*
   898 F.3d 1025 (10th Cir. 2018) ......................................................................................5

*Chaparro v. Carnival Corp.,*
   693 F.3d 1333 (11th Cir. 2012) ......................................................................................6

*Consejo de Desarrollo Economico de Mexicali, AC v. United States,*
   438 F. Supp. 2d 1194 (D. Nev. 2006) ..............................................................................13

*Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.,*

603 U.S. 799 (2024) ................................................................................7, 8, 10

*Ctr. for Biological Diversity v. Hamilton*,
    453 F.3d 1331 (11th Cir. 2006) .....................................................................5

*Ctr. for Env't L. & Pol'y v. U.S. Bureau of Reclamation*,
    655 F.3d 1000 (9th Cir. 2011) ......................................................................7

*Daingerfield Island Protective Soc'y v. Babbit*,
    40 F.3d 442 (D.C. Cir. 1994)........................................................................7

*Davila v. Gladden*,
    777 F.3d 1198 (11th Cir. 2015) ...................................................................14

*Desuze v. Ammon*,
    990 F.3d 264 (2d Cir. 2021) .........................................................................5

*Employment Division v. Smith*,
    494 U.S. 872 (1990).....................................................................................15

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
    36 F.4th 850 (9th Cir. 2022) .....................................................................9, 11

*Franklin v. Curry*,
    738 F.3d 1246 (11th Cir. 2013) .....................................................................6

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992).......................................................................................8

*Friends of Sierra R.R., Inc. v. Interstate Co. Comm'n*,
    881 F.2d 663 (9th Cir. 1989) .......................................................................13

*Friends of Tims Ford v. Tenn. Valley Auth.*,
    585 F.3d 955 (6th Cir. 2009) .........................................................................9

*Fund for Animals, Inc. v. Rice*,
    85 F.3d 535 (11th Cir. 1996) .......................................................................10

*Garraway v. Lappin*,
    No. 4:CV-10-1697, 2012 WL 959422 (M.D. Pa. Mar. 21, 2012) ...............17

*Green v. Brennan*,
    578 U.S. 547, 136 S. Ct. 1769, 195 L.Ed.2d 44 (2016) .............................7

*Halmos v. Bomardier Aerospace Corp.*,
    404 Fed. App'x. 376 (11th Cir. 2010) ..........................................................7

*Hardin v. Jackson*,
    625 F.3d 739 (D.C. Cir. 2010) ....................................................................11

*Jackson v. Modly*,
    949 F.3d 763 (D.C. Cir. 2020)......................................................................5

*Jama v. INS*,
    343 F. Supp. 2d 338 (N.D.J. 2004) ..................................................................................... 17

*Jicarilla Apache Tribe v. Andrus*,
    687 F.2d 1324 (10th Cir. 1982) ......................................................................................... 18

*Kansas v. Colorado*,
    514 U.S. 673 (1995) ........................................................................................................... 18

*Kason Indus., Inc. v. Component Hardware Grp., Inc.*,
    120 F.3d 1199 (11th Cir. 1997) ......................................................................................... 18

*Lockhart v. Kenops*,
    927 F.2d 1028 (8th Cir. 1991) ........................................................................................... 16

*Lowman v. Fed. Aviation Admin.*,
    83 F.4th 1345 (11th Cir. 2023) ......................................................................................... 10

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) .............................................................................................. 6, 15, 16

*Matushkina v. Nielsen*,
    877 F.3d 289 (7th Cir. 2017) ............................................................................................... 5

*McClash v. Fla. Dep't of Transp.*,
    619 F. Supp. 3d 1167 (M.D. Fla. 2022) .............................................................................. 9

*Miccosukee Tribe of Indians of Fla. v. United States*,
    716 F.3d 535 (11th Cir. 2013) ........................................................................................... 11

*Miccosukee Tribe of Indians of Fla. v. United States*,
    722 F. Supp. 2d 1293 (S.D. Fla. 2010) .............................................................................. 11

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ......................................................................................... 15

*Mulgrew v. U.S. Dep't of Transp.*,
    No. 23-CV-10365 (LJL), 2024 WL 3251732 (S.D.N.Y. June 20, 2024) ............................ 9

*NACSO Non-Profit Business League, Inc. v. Consumer Financial Protection Bureau*,
    No. 20-cv-61010, 2021 WL 863906 (S.D. Fla. Mar. 9, 2021) ............................................ 5

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*,
    2015 WL 476163 (M.D. Fla. Feb. 5, 2015) ....................................................................... 11

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*,
    46 F. Supp. 3d 1254 (M.D. Fla. 2014) .............................................................................. 11

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ........................................................................................................... 18

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998) ........................................................................................................... 10

iv

*Omnipoint Commc'ns, Inc. v. City of White Plains,*
   202 F.R.D. 402 (S.D.N.Y. 2001) ....................................................................................16

*Ouachita Watch League v. Jacobs,*
   463 F.3d 1163 (11th Cir. 2006) .................................................................................9, 10

*Power U Ctr. for Soc. Change, Inc. v. City of Miami,*
   No. 05-21963-CIV, 2006 WL 8432018 (S.D. Fla. Jan. 27, 2006)............................................7

*RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp.,*
   47 F. Supp. 3d 1353 (M.D. Fla. 2014) .................................................................................9

*Robertson v. Methow Valley Citizens Council,*
   490 U.S. 332 (1989)..........................................................................................................10

*Salt Lake City Corp. v. Shepherd,*
   No. 2:23-CV-786, 2024 WL 2158128 (D. Utah May 14, 2024) ............................................13

*SFM Holdings, Ltd. v. Banc of America Sec., L.L.C.,*
   600 F.3d 1334 (11th Cir. 2010) ............................................................................................7

*Sherbert v. Verner,*
   374 U.S. 398 (1963)..........................................................................................................15

*South Carolina v. United States,*
   No. 1:16-CV-00391-JMC, 2017 WL 976298 (D.S.C. Mar. 14, 2017) .....................................7

*Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention,*
   623 F.3d 1371 (11th Cir. 2010) ............................................................................................7

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
   239 F. Supp. 3d 77 (D.D.C. 2017)........................................................................................17

*Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater,*
   173 F.3d 1033 (6th Cir. 1999) ..............................................................................................9

*U.S. Steel Corp. v. Astrue,*
   495 F.3d 1272 (11th Cir. 2007) ............................................................................................9

*United States ex rel. Osheroff v. Humana, Inc.,*
   776 F.3d 805 (11th Cir. 2015) ..............................................................................................7

*United States v. Grady,*
   18 F.4th 1275 (11th Cir. 2021) ............................................................................................14

*Weinhoffer v. Davie Shoring, Inc.,*
   23 F.4th 579 (5th Cir. 2022) ...............................................................................................13

*Wild Horse Observers Ass'n, Inc. v. Jewell,*
   550 F. App'x 638 (10th Cir. 2013) .......................................................................................11

*Wilderness Watch & Pub. Emps. for Env't Resp. v. Mainella,*
   375 F.3d 1085 (11th Cir. 2004) ...........................................................................................10

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
    473 U.S. 172 (1985) ...................................................................................................8

*Wilson v. Block*,
    708 F.2d 735 (D.C. Cir. 1983) ...............................................................................16

*Zirpolo v. Williams*,
    2020 WL 3104078 (D. Colo. June 2020) ..............................................................17

**Statutes**

28 U.S.C. § 1658(a) .......................................................................................................17

28 U.S.C. § 2401(a) ....................................................................................................5, 7

42 U.S.C. § 2000 .............................................................................................................5

42 U.S.C. § 2000bb-1(a) ..............................................................................................14

42 U.S.C. § 4321 .............................................................................................................5

42 U.S.C. § 4332(2)(C) .................................................................................................11

47 U.S.C. § 332(c)(7)(B)(v) ...........................................................................................8

Pub. L. 113-121, 128 Stat. 1193 (2014) ....................................................................3, 17

Pub. L. 117-58, 135 Stat. 429 (2021) ..............................................................................3

Pub. L. No. 104-303, 110 Stat. 3658, 3767-68 (1996) ....................................................1

Pub. L. No. 106-541, 114 Stat. 2572 (2000) ...............................................................1, 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................6, 7

## INTRODUCTION

This case involves a challenge to the U.S. Army Corps of Engineers' Broward County Water Preservation Areas Project under the National Environmental Policy Act (NEPA) and the Religious Freedom Restoration Act (RFRA). Because the Corps approved the Project in 2012 and Plaintiffs' claims eminating from that decision accrued at the time of the decision, most of Plaintiffs' claims (Counts 1 and 3) are time-barred under the applicable statutes of limitations. In addition, Plaintiffs' RFRA claim (Count 3) fails to state a claim because the action challenged does not impose a "burden" on the exercise of religion, within the meaning of the statute. As a result, the only part of Plaintiffs' case that should proceed is Count 2, which alleges that the Corps should conduct a supplemental environmental impact statement. *See* Am. Compl. ¶¶ 155-56, ECF No. 21.

## FACTUAL BACKGROUND

Because the Project at issue is part of a far-reaching effort to restore the Everglades, and because the Project itself has a long history, some perspective is useful.

### A.  The Comprehensive Everglades Restoration Plan

In the 1992 and 1996 Water Resource Development Acts (WRDA) Congress directed the United States Army Corps of Engineers (Corps) to develop a comprehensive plan "for the purpose of restoring, preserving, and protecting the South Florida ecosystem." Order of Dismissal at 6, *NRDC v. Van Antwerp*, No. 9:07-cv-80444-DMM, ECF No. 193 (S.D. Fla. 2009) (quoting Pub. L. No. 104-303, § 528(b), 110 Stat. 3658, 3767-68 (1996)). In April of 1999, in accordance with Congress's mandate, the Corps released the "Central & South Florida Project Comprehensive Review Study Final Integrated Feasibility Report and Programmatic Environmental Impact Statement" (known as the Yellow Book, or the Restudy). *Id.*

The Restudy presented an Everglades restoration plan of large scope, encompassing sixty-eight projects gathered under thirteen categories. In the 2000 WRDA, Congress adopted and authorized the Corps' Restudy, which became known as the Comprehensive Everglades Restoration Plan (CERP). WRDA 2000, Pub. L. No. 106-541, 114 Stat. 2572 (2000). As the bill's principal Senate sponsor, Public Works Committee Chairman Bob Smith, put it, the Restudy was the "blueprint" that "provides the details and layout of the 30-year restoration project." 146 Cong. Rec. S8885-02, S8902 (daily ed. Sept. 21, 2000).

1

In WRDA 2000, Congress directed the Corps to implement CERP, and to integrate it with ongoing federal and state projects. WRDA 2000 §§ 601(b)(1)(A)-(B).[1] Congress envisioned the Corps playing the decisive role in implementation: as one Congressman put it, "[o]nly if the Corps of Engineers carries out their restoration initiative properly will [the Everglades] survive." 146 Cong. Rec. H11816-03, H11824 (daily ed. Nov. 3, 2000) (statement of Rep. Ralph Regula).

### B. The History of The Broward County Water Preservation Areas Project

The present case challenges the Central and Southern Florida Project/Broward County Water Preservation Areas Project (BCWPA), which has been a part of CERP from the beginning.

**2000**. The project was first authorized by Congress in 2000, as part of CERP. WRDA 2000, Pub. L. 106-541, §§ 601(b)(2)(C) (iv, v, vi); Am. Compl. ¶ 41.

**2007**. After publishing drafts in 2005, the Corps published the final Environmental Impact Statement (EIS) for the BCWPA project, together with the Project Implementation Report (PIR) (as required by WRDA 2000). Am. Compl. ¶ 47.

**2012**. The Corps published a revised PIR/EIS (in April) and a Record of Decision (in October). Am. Compl. ¶¶ 51-52; U.S. Army Corps of Eng'rs, Central And Southern Florida Project Broward County Water Preserve Areas Revised Final Integrated Project Implementation Report And Environmental Impact Statement, April 2007 (Revised May 2012) (Volume 1 attached as Exhibit A). The Corps received public comment throughput the EIS process – after the 2005 publication of the draft EIS, after the 2007 publication of the final PIR/EIS, and after the 2012 publication of the revised Final PIR/EIS. *See* Ex. A at iii, xxiii, xxiv-xxv, 9-1 – 9-8.

The 2012 Record of Decision (ROD) (attached hereto as Exhibit B) stated in part:

> The Final Project Implementation Report and Environmental Impact Statement (PIR/EIS) dated May 2012, and the report of the Chief of Engineers, dated May 21, 2012, address ecosystem restoration and recreation in the South Florida ecosystem. Based on these reports, the reviews of other Federal, State and local agencies, input from the public, and the review by my staff, I find the Broward County Water Preservation Areas project to be technically feasible, environmentally justified, cost effective, in accordance with environmental statutes, and in the public interest. *Thus, I approve the Broward County Water Preservation Areas project for construction*.

---

[1] Our references to "WRDA 2000" are shorthand for Title VI of that statute—the Title that dealt with the Everglades and CERP. The other titles of the 2000 legislation address water resource issues throughout the country not relevant to this case.

U.S. Army Corps of Eng'rs, RECORD OF DECISION, Central and Southern Florida Project/Broward County Water Preservation Areas Project/ Broward and Miami·Dade Counties, Florida (October 25, 2012) (Ex. B) at 1 (emphasis added). The ROD concluded:

> All applicable laws, Executive Orders. regulations, and local government plans are considered in the evaluation of alternatives and the selection of the recommended plan. Based on review of these evaluations, I find that the public interest would be best served by implementing the recommended plan. *This Record of Decision completes the National Environmental Policy Act process*.

*Id*. at 2 (emphasis added).

**2014.** Congress specifically authorized the BCWPA Project as part of CERP under § 7002 of the 2014 Water Resources Reform and Development Act, Pub. L. 113-121, 128 Stat. 1193 (2014).

**2017-18**. On April 28, 2017, the Florida Department of Environmental Protection issued the final permit to the Corps for the preliminary construction phase of the BCWPA Project, consisting of the "Northern Mitigation Area A Berm" (copy attached as Exhibit C).  The Berm project involved installing several culverts and building a berm to prevent runoff water from entering two finger lakes situated in the northern portion of the C-11 Impoundment site. Ex. C at 2; *see also id*. at 16-19 (diagrams showing work location). The Corps' website notes that "[t]he initial construction contract—for the Northern Mitigation Area A Berm (MAAB) portion of the C-11 component—was completed in November 2018." U.S. Army Corps of Eng'rs, Broward County Water Preserve Areas Facts & Information (2021), https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll11/id/4921 (last visited March 19, 2025).

**2023**. Congress provided funding that the Corps allocated to the BCWPA Project in the Infrastructure Investment and Jobs Act of 2022. Pub. L. 117-58, 135 Stat. 429 (2021). In September 2023, the Corps reviewed its NEPA compliance. The detailed Memorandum for the Record (copy attached as Exhibit D) concluded that "[t]he BCWPA project has not significantly changed since the 2007 PIR/EIS," and that "[i]n light of the [information reviewed] it has been determined that the BCWPA [Project] is in compliance with NEPA and that no further NEPA documentation is needed at this time." Ex. D at 7.

**2024**. The first of three remaining contracts relevant to BCWPA, a component of which abuts Plaintiffs' property, was awarded by the Corps in September 2024.

### C.  The Purpose and Design of The BCWPA

The major features of the overall project are two impoundments connected by an existing

canal. The Corps' revised PIR/EIS described the project as follows:

> The selected plan includes two above-ground impoundments and associated pumps
> and water control structures: the C-11 Impoundment with an effective interior
> storage of 1,068 acres and two wetland marsh mitigation areas (per Department of
> the Army permits) north of the C-11 Impoundment with 488 acres of wetland
> marsh; the C-9 Impoundment with an effective interior storage of 1,641 acres and
> canal conveyance improvements to connect the two impoundments; and an
> approximately 4,353 acre seepage management area east of the Water Conservation
> Area 3.

Ex. A at iii-iv. Diagrams in the PIR/EIS (*id*. at vii-viii) illustrate the location and configuration of

the project.

The project is designed to retain and store surface water for delivery to the Everglades

(and to other users), and to improve wildlife habitat.

> The selected plan would restore the quantity, timing and distribution of
> freshwater flows in the [Water Conservation Areas] and [Everglades National
> Park], increase the spatial extent of natural areas by improving flow patterns at the
> project site, and potentially provide water for other restoration projects. It would
> also help meet municipal, agricultural, and environmental water supply demands in
> the region during dry periods. The plan would restore approximately 563,000 acres
> of fish and wildlife habitat in the WCAs and 200,000 acres in the ENP, which would
> improve native plant and animal species abundance and diversity.

Ex. B at 1-2.

### D.  Plaintiffs' Lawsuit

Plaintiffs, Soka Gakkai International-USA (Soka Gakkai) and the Florida Nature and

Culture Center (FNCC) own and operate a religious retreat on land that adjoins the site of the C-

11 Impoundment, one of the two impoundment components of the BCWPA. Am. Compl. ¶¶ 22-

23. We refer to the C-11 Impoundment as the Project. Since 2007, Plaintiffs have written to the

Corps to express concern about the possible impacts of the Project on Plaintiffs' property and

activities. Am. Compl. ¶¶ 8, 67-107.

Plaintiffs filed suit against the Corps on December 30, 2024. ECF No. 1. After the Court

denied Plaintiffs' emergency injunction motion, ECF Nos. 16, 20, Plaintiffs filed their Amended

Complaint on March 6. ECF No. 21. Plaintiffs' Amended Complaint alleges that construction

and operation of the Project imposes a burden on Plaintiffs' exercise of their religion in violation

of the RFRA, 42 U.S.C. § 2000 *et seq*. Am. Compl. Count 3 (¶¶ 157-64). Plaintiffs also allege that the Corps has violated NEPA, 42 U.S.C. § 4321 *et seq.*, in four ways. Plaintiffs allege that the Corps failed properly to assess the likely environmental impacts of C-11 Impoundment in: (1) the 2007 PIR/EIS; (2) the 2012 amended PIR/EIS and ROD; and (3) in the 2023 MFR. Am. Compl. Count 1 (¶¶ 147-53). Finally, Plaintiffs allege that the Corps violated NEPA by not preparing a supplemental environmental impact statement (SEIS). Am. Compl. Count 2 (¶¶ 154-56).

Plaintiffs' Counts may thus be summarized:

1. NEPA (challenging the adequacy of the environmental review leading to Project approval) (Count 1); and

2. NEPA (alleging that the Corps should have prepared an SEIS) (Count 2); and

3. RFRA (alleging that the Project will burden religious exercise) (Count 3).

We seek dismissal of Counts 1 and 3. We refer to Count 1 as the "2007/2012 NEPA claims."

## ARGUMENT

Whether viewed as a jurisdictional limit under Rule 12(b)(1) or a pleading failure under Rule 12(6), Plaintiffs' 2007/2012 NEPA claims (Count 1) are barred under 28 U.S.C. § 2401(a).[2] Plaintiffs have admitted that they have been aware of this project, and have been communicating with the Corps about it, "for nearly twenty years." Pls.' Emer. Mot. For Prelim. Inj.("Pls.' Emer. Mot.") at 2, ECF No. 10; *see also* Am. Compl. ¶¶ 8, 67-107. Because Plaintiffs' 2007/2012 NEPA claims are subject to the six-year time limit in 28 U.S.C. § 2401(a), and because Plaintiffs did not file suit until 12-17 years after the 2007/2012 NEPA claims accrued, those claims are time-barred.

Plaintiffs' RFRA claim is also subject to dismissal under Rule 12(b)(6). The Supreme

---

[2] Other courts, in light of Supreme Court holdings on similar provisions, have questioned whether § 2401(a) can validly be viewed as a limit on district court jurisdiction. *See, e.g.*, *Desuze v. Ammon*, 990 F.3d 264, 269-70 (2d Cir. 2021); *Jackson v. Modly*, 949 F.3d 763, 776-78 (D.C. Cir. 2020); *Chance v. Zinke*, 898 F.3d 1025, 1029-33 (10th Cir. 2018); *Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017). But the Eleventh Circuit has not revisited its holding that the provision is jurisdictional. *See NACSO Non-Profit Business League, Inc. v. Consumer Financial Protection Bureau*, No. 20-cv-61010, 2021 WL 863906, at *3 n.3 (S.D. Fla. Mar. 9, 2021) (citing *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006)). Because a pleading failure would necessarily subsume any jurisdictional limit for present purposes, we focus on Rule 12(b)(6).

Court has rejected claims that the government's management of its own programs or property can impose a substantial burden on the exercise of religion. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988). The result is that Plaintiffs have failed to state an actionable claim under RFRA. And as with Plaintiffs' 2007/2012 NEPA claims, Plaintiffs' RFRA claim is time-barred because it accrued at the time the Corps issued the ROD in 2012 (if not earlier).

### A.  Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is, a complaint need not allege "detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, the court need not take allegations as true if they are merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

The Eleventh Circuit has recognized that courts can consider documents extrinsic to the complaint without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. This is true where (1) the documents are referred to in the complaint; (2) the evidence is central to the plaintiff's claim; and (3) the evidence's authenticity is not in question.

6

*SFM Holdings, Ltd. v. Banc of America Sec., L.L.C.*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015).

A court may also take judicial notice of publicly filed documents at the motion to dismiss stage without converting a Rule 12(b)(6) motion to a Rule 56 motion. *See Halmos v. Bomardier Aerospace Corp.*, 404 Fed. Appx. 376, 377 (11th Cir. 2010) (holding that the permissible scope of a 12(b)(6) motion to dismiss encompasses "the complaint, attachments to the complaint, and matters of public record"). In the NEPA context, documents reviewable under this rule include official government correspondence, agency publications, agency records of decision, and materials posted on agency websites. *See South Carolina v. United States*, No. 1:16-CV-00391-JMC, 2017 WL 976298, at *5 (D.S.C. Mar. 14, 2017) (collecting cases). That includes environmental impact statements (EISs). *See, e.g.*, *Ctr. for Env't L. & Pol'y v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1011 (9th Cir. 2011).

### B. Plaintiffs' 2007/2012 NEPA Claims are Time-Barred

The catch-all statute of limitations for APA claims provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). This six-year limitations period applies to NEPA claims. *Power U Ctr. for Soc. Change, Inc. v. City of Miami*, No. 05-21963-CIV, 2006 WL 8432018, at *2 (S.D. Fla. Jan. 27, 2006) (citing *Daingerfield Island Protective Soc'y v. Babbit*, 40 F.3d 442, 445 (D.C. Cir. 1994)).

In the Supreme Court's recent *Corner Post* decision, the Court examined the "accrual" under Section 2401(a) of a claim challenging agency action. *Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.*, 603 U.S. 799, 809 (2024). The fact pattern at issue in *Corner Post* involved a facial challenge to an agency rulemaking. *Id.* at 804. The Court held that the plaintiff's cause of action does not "accrue" under Section 2401(a) until "the plaintiff is injured by final agency action," even if the injury doesn't occur until after the agency's decisionmaking became final. *Id.* at 813 ("[I]njury, not just finality, is required to sue under the APA . . ."). *See also id*. at 809:

> A right of action "accrues" when the plaintiff has a "complete and present cause of action"— *i.e.*, when she has the right to "file suit and obtain relief." *Green v. Brennan*, 578 U.S. 547, 554, 136 S. Ct. 1769, 195 L.Ed.2d 44 (2016) (internal

7

quotation marks omitted). An APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action, so the statute of limitations does not begin to run until she is injured.

Thus, in order for a plaintiff to have an actionable APA claim (and for the statute of limitations to commence running) two tests must be met: (1) there must be "final agency action" as stipulated by APA Section 704; and (2) plaintiff must have suffered an actionable injury so that the cause of action has accrued. For the latter – on long-established principles – a cause of action accrues when plaintiff "knew or should have known" of the alleged injury.

Here, Plaintiffs were required to raise their 2007/2012 NEPA claims during the six years after those claims accrued. *Corner Post*, 603 U.S. at 809 ("A right of action 'accrues' when the plaintiff has a 'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief.'"). Plaintiffs' challenge to the 2007 and 2012 PIR/EISs and ROD accrued no later than when the Corps signed and publicized the ROD in 2012. The ROD meets the two-part test for "final agency action" reviewable under the APA, and Plaintiffs' alleged procedural injury occurred at the time the Corps completed its NEPA review and approved the Project. Plaintiffs participated in the NEPA process here, which is thus wholly unlike the situation in *Corner Post* where the plaintiff did not exist when the agency took its final agency action. Moreover, Plaintiffs have known about the Project and the purported harm to Plaintiffs for decades and thus knew or should have known of their present claim since 2012 at the latest. *See, e.g.*, Pls.' Emer. Mot. at 2, 7, 14, 17; Am. Compl. ¶¶ 8, 67-107. Plaintiffs' 2007/2012 NEPA claims are therefore time-barred and Count 1 should be dismissed.

## 1. The 2012 ROD meets the two-part test for reviewable final agency action

The determination of "finality" for APA purposes turns on two questions: the completion of the administrative decisionmaking process, and the legal effect of that decision. "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury . . . ." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985), superseded by statute on other grounds, 47 U.S.C. § 332(c)(7)(B)(v). "The core question [in the finality determination] is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505

8

U.S. 788, 797 (1992). Thus, "[t]o be considered 'final,' an agency's action: (1) 'must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature;' and (2) 'must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1280 (11th Cir. 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

The Corps' ROD here was final agency action. "As the Eleventh Circuit explained in *Ouachita Watch League*, it is 'well settled' that an agency's final EIS or the record of decision issued thereon constitutes final agency action for purposes of a NEPA claim." *McClash v. Fla. Dep't of Transp.*, 619 F. Supp. 3d 1167, 1191 (M.D. Fla. 2022) (quoting *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006) (quoting *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999))); *see also Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 868 (9th Cir. 2022) ("We have repeatedly held that final NEPA documents are final agency actions."); *Mulgrew v. U.S. Dep't of Transp.*, No. 23-CV-10365 (LJL), 2024 WL 3251732, at *16 (S.D.N.Y. June 20, 2024) ("[C]ourts have consistently deemed NEPA determinations final, even though those determinations were subject to reevaluation or required further steps before a project could be implemented") (collecting cases).

It may not always be the case that an EIS and ROD satisfy the final agency action requirement of the APA. But in this case the ROD specifically stated that "[t]his Record of Decision completes the National Environmental Policy Act process" and that "the Broward County Water Preservation Areas Project" is "approve[d] . . . for construction." Ex. B at 1-2. The ROD thus clearly "mark[s] the consummation of the agency's decisionmaking process" (the Corps ended its review of the project, including its NEPA review) and was a determination "from which legal consequences will flow'" (the Corps approved the Project for construction). *U.S. Steel Corp.*, 495 F.3d at 1280; *Bennett*, 520 U.S. at 177-78.

### 2. Plaintiffs' claim accrued with their alleged procedural injury in 2012

Prior to the Supreme Court's decision in *Corner Post*, courts held that "[a]cause of action accrues and the statute of limitations begins to run under the APA at the time of a 'final agency action.'" *RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp.*, 47 F. Supp. 3d 1353, 1365 (M.D. Fla. 2014) (citing *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 964 (6th Cir. 2009)). That is no longer true in all APA cases, because *Corner Post* teaches that accrual of an APA

claim occurs "when the plaintiff *is injured by* final agency action." 603 U.S. at 804 (emphasis added). But in the context of NEPA, which confers only procedural rights, the making of a decision based on an allegedly deficient NEPA process is itself the injury.

NEPA does not mandate particular results, instead prescribing a process to ensure that federal decision-makers consider, and that the public is informed about, a proposed action's potential environmental consequences. *Wilderness Watch & Pub. Emps. for Env't Resp. v. Mainella*, 375 F.3d 1085, 1094 (11th Cir. 2004) (citing *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989))). "NEPA imposes procedural requirements rather than substantive results, and so long as an agency has taken a 'hard look' at the environmental consequences, a reviewing court may not impose its preferred outcome on the agency." *Wilderness Watch*, 375 F.3d at 1094 (citing *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 546 (11th Cir. 1996)).

The Eleventh Circuit emphasized the point that an allegedly deficient NEPA process is itself the injury in *Ouachita*. There the Eleventh Circuit reversed a district court's finding that challenges to changes in certain forest plans were not ripe for judicial review. The court summarized the usual ripeness standard, then noted that "NEPA adds an important twist." 463 F.3d at 1174. The court stated:

> In a NEPA suit, the issue presented for review typically is whether the agency has complied with the statute's particular procedures. Because of the rather special nature of the injury (that is, the failure to follow NEPA), the issue is ripe at the time the agency fails to comply. "Hence a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). As we see it, that is the end of the proper ripeness analysis in a NEPA suit.

*Id.* Indeed, when coupled with the APA's final agency action requirement, this makes perfect sense. NEPA's aim is to inform agency decision-making through process. *Lowman v. Fed. Aviation Admin.*, 83 F.4th 1345, 1361 (11th Cir. 2023). And an alleged violation of NEPA is (at its base) a claim that the agency did not properly inform its decision. Thus, a NEPA claim accrues when the agency makes the decision at issue, thereby procedurally injuring a person or entity that believes it was entitled to further (or different) NEPA procedure in the course of that decision-making.

Thus, Plaintiffs would be incorrect to argue that their NEPA claim did not accrue until the Corps began preparing to construct the approved Project. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 871 (9th Cir. 2022) ("[T]he imminence or occurrence of site-specific action is irrelevant to the ripeness of procedural injuries, which are ripe and ready for review the moment they happen."); *see also Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 46 F. Supp. 3d 1254, 1287 (M.D. Fla. 2014), *adhered to on reconsideration*, No. 2:11-CV-578-FTM-29CM, 2015 WL 476163 (M.D. Fla. Feb. 5, 2015), *aff'd sub nom. Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, 835 F.3d 1377 (11th Cir. 2016), *and aff'd sub nom. Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, 835 F.3d 1377 (11th Cir. 2016) ("Plaintiffs' procedural injuries are as ripe as they are going to get, even if no recreational [off-road vehicle] trails are ever used in the Addition.")

Count 1 alleges that the Corps approved the Project based upon a faulty EIS, thereby violating NEPA. Am. Compl. ¶¶ 148-52. But that approval—and the alleged NEPA injury to Plaintiffs that came along with it—occurred when the Corps completed the EIS and issued the ROD in 2012.

### 3.  The Corps' EIS and ROD were complete in 2012, and Plaintiffs were fully aware of their contents and conclusions at that time

Under the discovery rule "[a] civil action against the United States accrues when a plaintiff knew or should have known of the wrong and was able to commence an action based upon that wrong." *Miccosukee Tribe of Indians of Fla. v. United States*, 722 F. Supp. 2d 1293, 1297 (S.D. Fla. 2010), aff'd, 716 F.3d 535 (11th Cir. 2013) (internal quotation marks and citations omitted); *Wild Horse Observers Ass'n, Inc. v. Jewell*, 550 F. App'x 638, 640 (10th Cir. 2013); *Hardin v. Jackson*, 625 F.3d 739, 743 (D.C. Cir. 2010). And under the "knew or should have known" standard, a claim accrues when a plaintiff in a position "to obtain knowledge of [its] injury . . . ." *Cal. Valley Miwok Tribe v. United States*, 197 F. App'x 678, 679 (9th Cir. 2006) (citations omitted).

NEPA requires the preparation of an Environmental Impact Statement for any major federal action "significantly affecting the quality of the human environment[.]" 42 U.S.C. § 4332(2)(C). The Corps prepared an EIS for the BCWPA project, together with the Project Implementation Report (PIR) (as required by WRDA 2000), in 2007. Am. Compl. ¶ 47. In 2012,

the Corps published the revised PIR/EIS (in April) and Record of Decision (in October). Am.
Compl. ¶¶ 51-52; Exs. A, B.

The public was involved throughput the EIS process – after the 2005 publication of the
draft EIS, after the 2007 completion of the final PIR/EIS, and after the 2012 publication of the
revised Final PIR/EIS. *See* Ex. A at iii, xxiii, xxiv-xxv, 9-1 – 9-8. As Plaintiffs' Amended
Complaint acknowledges, Plaintiffs "regularly communicated . . . with the Corps" about "the
Project" "[s]ince 2007." Am. Compl. ¶ 8. *See id*. ¶¶ 52, 58 (Plaintiffs submitted comments "on
several occasions . . . since 2007"); ¶ 67 ("Since January 2007, Plaintiffs have regularly
attempted to engage with Defendants and SFWMD regarding the C-11 Impoundment Project"); ¶
68:

> Plaintiffs attended the Defendants' public meetings on the C-11 Impoundment
> Project, submitted detailed written comments on the 2007 PIR/EIS and
> subsequently presented detailed technical evaluations over the next several years,
> and repeatedly hosted both SFWMD and Corps representatives for multiple tours
> of the FNCC Property. These communications and submissions, which extended
> from 2007 to 2024, were supported by technical experts retained by the Plaintiffs.

Plaintiffs provided the Corps with detailed commentary on the 2007 EIS (*id.* ¶¶ 69-71, 107, 118)
and complain that "the 2012 Revised PIR/EIS ignored all of Plaintiffs' concerns[.]" *Id.* ¶ 72.

Plaintiff specifically admits that it knew about the 2007 PIR/EIS, because they
commented on it at the time. Am. Compl. ¶¶ 67-70. And there can be no question that Plaintiffs
knew or should have known about the 2012 PIR/EIS and ROD. Plaintiffs admit to being
involved in the NEPA process throughout. Am. Compl. ¶¶ 8, 67; Pls.' Emer. Mot. 2. Plaintiffs
actually met with the project's State sponsor in 2015 to discuss their "concerns with the C-11
Impoundment Project." Am. Compl. ¶ 76. Even if Plaintiffs were not at an earlier time in a
position "to obtain knowledge" about the 2012 EIS/PIR and ROD, they certainly would have
been so at the 2015 meeting—nine years before they filed suit.[3] And in fact, the ROD was

---

[3] Also relevant to the question when Plaintiffs knew or should have known that the Corps'
approval of the Project was complete is the fact that actual construction commenced after Florida
issued the final permit to the Corps for berm and culvert construction in 2017. Ex. C. This initial
construction work was *completed* in November 2018, more than six years before Plaintiffs filed
suit. U.S Army Corps of Engineers, *Broward County Water Preserve Areas*,
https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll11/id/4921 (last visited March
19, 2025).

published at the time of issuance.[4] *See Salt Lake City Corp. v. Shepherd*, No. 2:23-CV-786, 2024 WL 2158128, at \*1 (D. Utah May 14, 2024) (statute of limitations begins to run with publication of notice of availability of Record of Decision); cf. *Friends of Sierra R.R., Inc. v. Interstate Co. Comm'n*, 881 F.2d 663, 667–68 (9th Cir. 1989) (constructive notice provided in the Federal Register is sufficient to trigger the statute of limitations). Plaintiffs claim to have been keenly interested in the project from its inception and cannot seriously argue they would not meet the "could have known" standard.

The decision in *Consejo de Desarrollo Economico de Mexicali, AC v. United States*, 438 F. Supp. 2d 1194 (D. Nev. 2006) is illustrative. Plaintiffs there alleged (among other things) that a canal reconstruction project would harm endangered bird species. The court dismissed the claim under the six-year statute of limitations, holding that plaintiffs' claim accrued when defendant published its final EIS and ROD in the federal register.

> Plaintiffs therefore were on notice of the injury which is the basis of claim seven because the ROD alerted Plaintiffs to the fact that the agency had decided to re-build and line the canal and Plaintiffs specifically allege '[b]oth the FEIS and recent scientific evidence indicate that listed migratory bird species will be taken or killed by the proposed new canal project.'

438 F. Supp. 2d at 1206. The court applied the same reasoning to the plaintiffs' NEPA claim alleging water rights issues. *Id*. ("Plaintiffs knew or had reason to know, in 1994, that the FEIS failed to consider important water rights issues and failed to explore alternatives as required by NEPA and the APA because the FEIS was noticed in the Federal Register on April 14, 1994.")

---

[4] Exhibit E consists of two screenshots showing the publication on the internet of the "RECORD OF DECISION FOR BCWPA" on November 15 and December 3, 2012, with hyperlinks to the ROD itself. These historic screenshots were retrieved on March 13 from a widely-used internet archive (https://web.archive.org) popularly known as "Wayback Machine." Internet Archive, https://web.archive.org (last visited March 13, 2025). Several courts have taken judicial notice of Wayback Machine archives of government (and other) internet postings. *See Capua v. Air Europa Lineas Aereas S.A. Inc*., No. 20-CV-61438-RAR, 2021 WL 965500, at \*1 n.4 (S.D. Fla. Mar. 15, 2021) (collecting cases). There has been a diversity of views on the subject, *see Weinhoffer v. Davie Shoring, Inc*., 23 F.4th 579, 583-84 (5th Cir. 2022) (collecting cases), but Plaintiffs' admitted involvement since 2007 resolves the "knew or should have known" issue in itself.

**4. Plaintiffs' allegations concerning the 2023 MFR cannot salvage Count 1**

Count 1 also references the Corps' 2023 MFR. *See* Am. Compl. ¶¶ 149–51. But the 2023 MFR was not an assessment of project effects intended to inform the decision to approve the Project. Ex. D. Indeed, the MFR occurred eleven years after Project approval. Instead, the MFR assessed whether the Corps needed to supplement its prior NEPA analysis before beginning Project construction, concluding:

> The BCWPA project has not significantly changed since the 2007 PIR/EIS. Impacts to water quality, air resources, wetlands etc. analyzed in the 2007 PIR/EIS remains sufficient for the project. An additional updated analysis would not determine any significantly different effects to the environment beyond what in found in the 2007 PIR/EIS.

Ex. D at 7. Plaintiffs' claim that Corps should have (or still should) supplement the 2012 PIR/EIS is the focus of Count 2. *See* Am. Compl. ¶¶ 154–56. And even if the MFR's reference in Count 1 prevents dismissal of that count in full under the statute of limitations, what remains would only be duplicative of Count 2. Either way, any claim or argument that the Corps failed to comply with NEPA in approving the Project is time-barred.

Plaintiffs' 2007/2012 NEPA claims accrued in 2012 and should be dismissed as untimely filed.

**C.    Plaintiffs' RFRA Claim Should be Dismissed.**

Plaintiffs' RFRA claim (Count 3) also requires dismissal. RFRA forbids the government from "substantially burden[ing] a person's exercise of religion" unless "application of the burden to the person" furthers a "compelling governmental interest" and is "the least restrictive means of furthering that" interest. 42 U.S.C. § 2000bb-1(a) and (b). "Thus, to establish a *prima facie* RFRA claim, a [movant] must first show (1) that he or she was exercising (or was seeking to exercise) his or her sincerely held religious belief, and (2) that the government substantially burdened the defendant's religious exercise." *United States v. Grady*, 18 F.4th 1275, 1285 (11th Cir. 2021) (citing *Davila v. Gladden*, 777 F.3d 1198, 1204 (11th Cir. 2015)). Plaintiffs have not pled a plausible claim that the challenged project burdens their exercise of religion in violation of RFRA. In addition, Plaintiffs' RFRA claim is untimely.

### 1. The Corps is not burdening Plaintiffs' exercise of religion

Plaintiffs have not established a *prima facie* case here because they have not alleged, and cannot allege, that the government has substantially burdened their religious exercise.[5] To show a "burden," the claimant must show that the government is *exercising coercion over him or his property*—such as by imposing a fine or denying an otherwise available benefit—in a manner that impacts his religious exercise. *See, e.g.*, *Sherbert v. Verner*, 374 U.S. 398, 400–01 (1963), (denial of unemployment benefits due to the plaintiff's refusal to work on her Sabbath day was burden on religion); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) (holding that government project with "devastating effects on traditional Indian religious practices" was not a "burden" because it did not coerce plaintiffs into violating their beliefs or penalize religious activity); *Bowen v. Roy*, 476 U.S. 693, 707–08 (1986) (holding that statutory requirement that a state agency use a social security number in administering benefit programs does not violate the free exercise clause, notwithstanding the plaintiffs' belief that use of the number would impair their child's spirit). An adverse effect or "inconvenience on religious exercise" is not sufficient to establish substantial burden. *See Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1227 (11th Cir. 2004).

Further, the Supreme Court has rejected claims that the government's management of its own programs or property can impose a substantial burden on the exercise of religion. *See Lyng*, 485 U.S. at 449; *Bowen*, 476 U.S. at 707–08. In *Lyng*, a group of Indian and environmental plaintiffs challenged the Forest Service's decision to construct a road on federal lands in an area traditionally used for religious purposes. *Lyng*, 485 U.S. at 441–42. The Supreme Court acknowledged that the proposed project would have "severe adverse effects on the practice of [the plaintiffs'] religion." *Id.* at 447. But the Court nonetheless rejected the plaintiffs' free-exercise claim, explaining that the government's management of its own property did not impose a cognizable burden on the plaintiffs' exercise of their religion because it did not *coerce* them into violating their religious beliefs nor *penalize* them for adhering to them. *Id.* at 449. The Court

---

[5] Courts have held that the term "substantial burden" in RFRA is synonymous with that term as used in free exercise jurisprudence prior to *Employment Division v. Smith*, 494 U.S. 872 (1990), the case that prompted RFRA's enactment. *See Midrash Sephardi*, *Inc. v. Town of Surfside,* 366 F.3d 1214, 1227 (11th Cir. 2004).

explained that "government simply could not operate if it were required to satisfy every citizen's religious needs and desires" in matters such as the administration of public lands. *Id*. at 452.

Other courts have similarly found that the government does not substantively burden religious exercise when it uses or transfers its own property. *See, e.g.*, *Apache Stronghold v. United States*, 101 F.4th 1036, 1061, 1063 (9th Cir. 2024) (en banc) (holding that RFRA "subsumed" *Lyng*'s holding and rejecting claim that government use of public land in a manner adversely impacting plaintiffs' religious use of that land imposed a substantial burden under RFRA) (cert. petition pending); *accord Lockhart v. Kenops*, 927 F.2d 1028 (8th Cir. 1991); *Wilson v. Block*, 708 F.2d 735 (D.C. Cir. 1983) (reaching same result under Free Exercise Clause). Nor does RFRA give Plaintiffs the right to control how *someone else's* property is used. *See Omnipoint Commc'ns, Inc. v. City of White Plains*, 202 F.R.D. 402 (S.D.N.Y. 2001) (holding that RFRA's sister statute, RLUIPA, does not provide cause of action for synagogue to challenge construction "on someone else's property").

Plaintiffs have not alleged that they are being coerced to act contrary to their religious beliefs. They assert that the Project will adversely impact their use of their property for religious activities due to vibration, noise, and other impacts stemming from construction and operation of the Project. Am. Compl. ¶¶ 6, 8, 14–16, 118, 160–63. Specifically, Plaintiffs allege that the construction and operation of the Project will damage buildings in which Plaintiffs practice their religion, "damage the artifacts and symbols they revere, substantially burden their ability to use the carefully landscaped outdoor areas for religious practices, and disrupt the serenity and harmony with nature central to their religious practices." *Id.* ¶ 161. But the Complaint does not allege that the Corps' construction of the Project is coercing (or will coerce) Plaintiffs into violating their religious beliefs or penalize them for exercising their religious beliefs. Further, the Corps is constructing the Project on property owned by the local sponsor for this ecosystem restoration project. Without an exercise of the coercive power of the state against Plaintiffs or *their own* property, there is no "burden" on their religious exercise. *See, e.g., Lyng*, 485 U.S. at 449. Plaintiffs therefore have not pled a plausible claim for relief based upon a government action "substantially burdening" their religious exercise under RFRA.

In addition, to the extent Plaintiffs allege that construction or operation of the C-11 Impoundment will physically damage their property (as opposed to interference with the quiet

16

enjoyment of their property), Plaintiffs still have not stated a valid RFRA claim. Again, Plaintiffs' RFRA claim is based not on coercion, but on the premise that construction and operation of the Project will allegedly damage Plaintiffs' property and interfere with their religious activity on the property. *See* Am. Compl. ¶¶ 93, 120, 161. Plaintiffs do not assert that the Corps has taken their property through eminent domain or placed any legal restrictions on what Plaintiffs can do with their land, for example. Thus Plaintiffs have not alleged any governmental coercion or penalties that would support their "substantial burden" claim under RFRA.

Accordingly, Plaintiffs have not pled a *prima facie* RFRA claim and their RFRA claim therefore should be dismissed.

### 2. Plaintiffs' RFRA claim is time-barred

RFRA does not contain a statute of limitations, but Congress has established a general statute of limitations of four years for claims arising under laws passed after 1990. *See* 28 U.S.C. § 1658(a). "A RFRA claim is subject to the four-year statute of limitations that generally governs causes of actions brought under federal statutes enacted after 1990." *See Burkman v. Bureau of Prisons*, No. 3:23-CV-506 (JAM), 2024 WL 4135798, at *5 (D. Conn. Sept. 10, 2024) (citing 28 U.S.C. § 1658(a); *Zirpolo v. Williams*, 2020 WL 3104078, at *4 (D. Colo. June 2020), *aff'd*, 2022 WL 2118440 (10th Cir. June 13, 2022)); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77, 87 (D.D.C. 2017); *Garraway v. Lappin*, No. 4:CV-10-1697, 2012 WL 959422, at *3 (M.D. Pa. Mar. 21, 2012); *Al-Sadun v. DCFS*, No. 08 C 4802, 2011 WL 1378638, at *3 (N.D. Ill. Apr. 11, 2011); *Jama v. INS*, 343 F. Supp. 2d 338, 365 (N.D.J. 2004). Under § 1658(a), "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

Here, like Plaintiffs' NEPA claim, Plaintiffs RFRA claim accrued outside the statute of limitations. The Corps' decision-making on the BCWPA concluded with the ROD in 2012. *See* ROD, Ex. B at 1 ("Thus, I approve the Broward County Water Preservation Areas project for construction."). In addition, Congress specifically authorized the Project under § 7002 of the 2014 WRRDA, Pub. L. 113-121. And Plaintiffs knew about their asserted injury well outside the limitations period—Plaintiffs assert that they have made specific comments about the Project since 2007. *See* Am. Compl. ¶¶ 67-71. According to the Complaint, "Plaintiffs have repeatedly

17

and specifically identified themselves to the Corps, explained the explicit purpose and use of the FNCC Property as a Buddhist religious facility, and identified the adverse impacts to the FNCC Property and the religious activities practiced there that would be caused by the Project." Am. Compl. ¶ 68. Plaintiffs' claim, therefore, accrued more than four years before they brought their action and is time-barred.

### D. Plaintiffs' Counts 1 and 3 are Barred by Laches

In addition, the majority of Plaintiffs' claims (those under RFRA, and those challenging the 2012 EIS/ROD) are barred by the doctrine of laches. Laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002); *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). The doctrine stems from the principle that "equity aids the vigilant and not those who slumber on their rights." *Kansas v. Colorado,* 514 U.S. 673, 687 (1995) (quotations omitted); *see also Bowman v. Wathen,* 42 U.S. 189, 193 (1843) ("[A] court of equity . . . has always refused its aid to stale demands, where the party has slept upon his rights for a great length of time." (quotations omitted). Even in environmental cases where the defense is applied "sparingly," laches bars equitable relief when there is a clear lack of diligence by the plaintiff and prejudice to the defendant. *See, e.g., Apache Survival Coal. v. United States*, 21 F.3d 895 (9th Cir. 1994); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1337–39 (10th Cir. 1982).

Here, Plaintiffs assert that they raised their concerns as long ago as 2007. *See, e.g.*, Am. Compl. ¶ 67. They could have filed suit any time after the ROD was issued because the ROD approved the construction of the Project. *See* ROD, Ex. B. Plaintiffs did not file suit after Congress funded the Project in an appropriations bill signed at the end of 2022, despite their admission that the Corps could construct and operate the Project at that time. *See* Am. Compl. ¶ 45. Instead, they waited until after the Corps awarded a contract for land clearing to begin in September 2024 and almost to the time when the Corps was ready to issue a Notice to Proceed with the clearing.

Plaintiffs' unreasonable delay harmed the Corps, which has invested substantial time and money in the Project. The Corps received its State permit for the initial construction phase of the Project (installing culverts and building a berm enclosing two lakes in the northern portion of the

Project footprint) in 2017, Ex. C, and completed construction of the culvert/berm phase in November 2018. U.S Army Corps of Engineers, *Broward County Water Preserve Areas*, https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll11/id/4921 (last visited March 19, 2025). The Corps then proceeded with development of the technical specifications of the remaining Project components and advertised and issued the contract for clearing. *See, e.g.*, Am. Compl. ¶¶ 109-115; Ex. D (noting design refinements after the 2007 EIS). The Corps has spent years of work and public resources on the Project, all while Plaintiffs sat on their hands. Given that Plaintiffs' unreasonable delay caused harm to the Corps, their claims are barred by the doctrine of laches.

## CONCLUSION

The Court should dismiss Counts 1 and 3. Both are time-barred and subject to laches, and Count 3 fails to state an actionable RFRA claim.

Dated this 20th day of March, 2025.

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
U.S. Department of Justice
Environment and Natural Resources Division

*/s/Peter Kryn Dykema*
Peter Kryn Dykema
Devon Lehman McCune
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.   20044-0482
peter.dykema@usdoj.gov
devon.mccune@uusdoj.gov

Phone: (202) 305 0436
Fax: (202) 305 0274
Attorneys for Defendants

Electronically filed.

19

## LIST OF EXHIBITS

EXHIBIT A     *Central And Southern Florida Project Broward County Water Preserve Areas Revised Final Integrated Project Implementation Report And Environmental Impact Statement*, April 2007 (Revised May 2012)

EXHIBIT B     *RECORD OF DECISION, Central and Southern Florida Project/Broward County Water Preservation Areas Project/ Broward and Miami·Dade Counties, Florida* (October 25, 2012)

EXHIBIT C     Florida Department of Environmental Protection *Comprehensive Everglades Restoration Plan Regulation Act (CERPRA) Permit Construction And Interim Operations Authorization* Issued: August 3, 2016 Modified: April 28, 2017

EXHIBIT D     *Memorandum For Record*, Broward County Water Preserve Areas National Environmental Policy Act Coverage Determination (18 September 2023)

EXHIBIT E     November 15 and December 3, 2012, Corps of Engineers Internet postings of the October 25, 2012 Record of Decision with hyperlinks to the ROD itself, retrieved on March 13, 2025, from https://web.archive.org