UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-62452-WPD

SOKA GAKKAl INTERNATIONAL-USA,
a California non-profit religious corporation, and
FLORIDA NATURE AND CULTURE
CENTER, LLC, a Florida limited liability
company,

    Plaintiffs,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS, COLONEL BRANDON L.
BOWMAN, District Commander, Army
Corps of Engineers, Jacksonville Office,
in his official capacity,

    Defendants.
_____/

## **ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

THIS CAUSE is before the Court upon the Motion for Partial Dismissal, seeking dismissal of Counts I and III of Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief Under the National Environmental Policy Act, the Administrative Procedure Act, and the Religious Freedom Restoration Act (the "Motion"), filed on March 20, 2025 by Defendants United States Army Corps of Engineers and Colonel Brandon L. Bowman. [DE 22]. The Court has carefully considered the Motion [DE 22], Plaintiffs Soka Gakkai International-USA and Florida Nature and Culture Center, LLC's, Response in Opposition to Defendants' Motion for Partial Dismissal ("Response") [DE 27], Defendants' Reply in Support of Motion for Partial Dismissal ("Reply") [DE 28], the record in this case, and is otherwise fully advised in the

1

premises. The Court held oral argument on the Motion on July 8, 2025. *See* [DE's 30, 31]. For the reasons stated herein, the Court will **DENY** the Motion.

## I. BACKGROUND

Plaintiffs Soka Gakkai International-USA ("SGI-USA") and Florida Nature and Culture Center, LLC ("FNCC") filed their First Amended Complaint ("FAC") on March 6, 2025, seeking declaratory and injunctive relief against Defendants United States Army Corps of Engineers ("Corps") and Colonel Brandon L. Bowman ("Bowman") in his official capacity as District Commander of the Jacksonville District of the Army Corps. *See* Am. Compl. [DE 21]. Plaintiffs allege violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et *seq.*, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000 *et seq.*, based on Defendants' approval and decision to proceed with construction of the C-11 Impoundment Project ("Project"), a component of the Comprehensive Everglades Restoration Plan ("CERP").

According to the FAC, Plaintiff SGI-USA is a non-profit religious organization and the American branch of a global religious community of more than 11 million people that practice Nichiren Buddhism. [DE 21] at ¶¶ 2, 22. FNCC owns and operates a 118-acre retreat center in Weston, Florida, used exclusively for SGI-USA's religious activities. ¶¶ 3, 23. FNCC organizes and conducts approximately 33 multi-day retreats each year for several thousand SGI-USA Buddhist members. ¶ 23. These retreats enable SGI-USA members to gather in community to engage in the exercise of their Buddhist spiritual faith utilizing the FNCC's conference, dining, dormitory, and outdoor facilities. ¶ 23. A central attribute of the FNCC retreats is that they are held in the serene and peaceful solitude of the FNCC, which was constructed almost thirty years ago and has since been maintained and utilized exclusively for this purpose. ¶ 23. The FNCC

property features religiously significant facilities, wetlands, and outdoor spaces essential to SGI-USA's spiritual retreats. ¶ 23, 26–32.

The C-11 Impoundment Project ("The Project"), as described in the FAC, involves the construction of a large above-ground reservoir, seepage canal, underground seepage barrier wall, seepage barrier trench, and a seven-story pump station immediately adjacent to Plaintiffs' property. ¶¶ 5, 35, 53. The estimated construction time expanded from "temporary" in 2012 to more than nine (9) years. ¶ 53. Plaintiffs allege that the construction and operation of the Project will (i) physically damage the FNCC Property and related ecosystem, and (ii) substantially disrupt and interfere with SGI-USA's and its members' protected religious activity on the FNCC Property. ¶ 6. Plaintiffs allege the Project will create increased noise; flying rocks and debris; noxious odors; disease vectors from stagnant water; decreased water quality and groundwater levels threatening FNCC buildings and on-site wetlands; degraded air quality; increased dangerous wildlife intrusion onto the FNCC Property preventing use of outdoor areas for spiritual purposes; destructive vibrations causing damage to the FNCC's buildings, structures and irreplaceable historical and religious contents; and adverse aesthetics, all of which will impair Plaintiff's ability to conduct Buddhist retreat activities and other Buddhist religious practices at the FNCC. ¶¶ 6, 70, 118–122.

In Count I, Plaintiffs allege that Defendants violated NEPA and the APA when Defendants failed to take a "hard look" at the Project's environmental impacts on the FNCC property and surrounding ecosystem in the 2007 Project Implementation Report and Environmental Impact Statement ("2007 PIR/EIS"), the 2012 Project Implementation Report and Environmental Impact Statement ("2012 PIR/EIS"), and the 2023 Memorandum for

3

Record ("2023 MFR"), which declined to update the analysis despite alleged material design changes and new information. ¶¶ 13, 54, 58, 64, 66, 147–153.

In Count II—which Defendants do not challenge in the present Motion—Plaintiffs allege that the Corps violated NEPA and the APA when the Corps failed to supplement the already flawed 2007 PIR/EIS and 2012 PIR/EIS, despite making material changes to the Project's design and construction schedule and receiving new information from the public—including from Plaintiffs—after 2012. ¶¶ 154–156.

In Count III, Plaintiffs allege that the construction and operation of the Project will substantially burden their religious exercise in violation of the RFRA. ¶ 160. Plaintiffs claim that Project-related impacts—such as noise, vibration, and visual disruption—will interfere with SGI-USA's use of the FNCC property for outdoor prayer, reflection, and other spiritual activities central to its Buddhist practice. ¶¶ 38–39. Plaintiffs further allege that the Corps failed to adopt less restrictive alternatives and assert that they face irreparable harm absent injunctive relief. ¶¶ 153, 162.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted. According to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief." When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the complaint. *See Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings

4

that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679). "[W]hen resolving a motion to dismiss. . ., a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, No. 22-11359, 2024 WL 3384936, at *6 (11th Cir. July 12, 2024).

### III.  DISCUSSION

Defendants move to dismiss Count I of the FAC as untimely under the six-year statute of limitations applicable to claims brought under the APA, 28 U.S.C. § 2401(a), and Count III as both untimely under the four-year statute of limitations in 28 U.S.C. § 1658(a) and insufficient under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim under the RFRA. Defendants also contend that the equitable doctrine of laches bars Count I and Count III. The Court addresses each argument in turn.

A.  <u>Count I – Statute of Limitations under APA and NEPA</u>

Defendants argue that Count I should be dismissed as untimely under the six-year statute of limitations provided in 28 U.S.C. § 2401(a). According to Defendants, the limitations period began to run in 2012, when the Corps finalized its NEPA review and issued a Record of Decision ("ROD") approving the Broward County Water Preserve Areas ("BCWPA") project. Defendants contend that because Plaintiffs did not file this action until 2024—more than six years later—Plaintiffs' 2007/2012 NEPA claims in Count I are time-barred.

Plaintiffs respond that their claim did not accrue in 2012 because they did not suffer injury until years later, when the Corps finalized detailed design plans for the Project, Congress

funded the Project in 2022, and the Corps issued a 2023 MFR confirming its intent to proceed without additional environmental review. Plaintiffs argue that under *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799 (2024), the statute of limitations period does not begin to run until the plaintiff is injured by final agency action, and that this case presents disputed factual issues regarding when any injury to Plaintiffs occurred.

The Court agrees with Plaintiffs that dismissal of Count I at the motion to dismiss stage is premature and unwarranted. Under *Corner Post*, an APA claim does not accrue "until the plaintiff is *injured* by final agency action." *Id.* at 813 (emphasis added). A plaintiff must have "a complete and present cause of action," which arises only after injury—not merely after an agency completes its decision-making. *Id.* at 809, 817. Although the Corps asserts that the 2012 ROD constituted final agency action that concluded its NEPA process, Plaintiffs contend that the ROD neither satisfied the APA's finality requirement nor inflicted any cognizable injury on Plaintiffs in 2012.

The Corps argues that a NEPA claim accrues when the agency makes a decision based on an allegedly deficient environmental review, because in such cases, the failure to follow NEPA's procedural requirements constitutes injury. *See Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1174 (11th Cir. 2006) (explaining that a NEPA claim is ripe when the agency allegedly fails to comply with procedural requirements, even if the underlying project has not yet caused on-the-ground effects). The Court agrees that procedural violations can constitute injury in some cases. However, a procedural violation—standing alone—does not trigger the statute of limitations under *Corner Post*. Rather, the claim accrues when the violation results in a cognizable injury to the particular plaintiff. *Corner Post*, 603 U.S. at 817. Plaintiffs plausibly allege that no such injury occurred until 2023, when the Corps issued the MFR reaffirming its

6

prior analysis and refusing to conduct further review, despite material project changes and Plaintiffs' submissions. *See* [DE 21] at ¶¶ 53, 57–58. Determining when Plaintiffs first suffered a cognizable injury turns on fact-specific questions that the Court cannot resolve on a motion to dismiss.

Dismissal based on statute of limitations grounds is only appropriate when the complaint—on its face—shows that the limitations period has run. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). Here, Plaintiffs do not concede that their claim accrued in 2012, and instead sufficiently allege that any injury resulting from final agency action occurred within six years of filing suit. At this stage, the Court cannot determine as a matter of law that Count I is time-barred.

Accordingly, the Court denies the Motion for Partial Dismissal as to Count I on statute of limitations grounds.

B. *Count III – Statute of Limitations under RFRA*

Defendants argue that Count III is time-barred under the four-year statute of limitations in 28 U.S.C. § 1658(a), which governs claims brought under the RFRA. Under § 1658(a), "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

According to Defendants, Plaintiffs' RFRA claim accrued no later than 2012, when the Corps issued its ROD and Plaintiffs began raising religious objections. Defendants contend that Plaintiffs identified the Project's adverse impacts on the FNCC property and on SGI-USA's religious activities well before the limitations period.

Plaintiffs respond that their RFRA claim did not accrue—and could not have accrued—any earlier than December 2022, when Congress funded the Project and design changes continued. Plaintiffs allege that their religious exercise first became burdened in 2023, when the Corps issued an MFR stating it would move forward with the Project without conducting further environmental review or addressing Plaintiffs' religious objections.

The Court finds that Count III cannot be dismissed on statute of limitations grounds at this stage. A claim accrues when the plaintiff has a complete and present cause of action—namely, when the government's conduct imposes a substantial burden on religious exercise. *See Green v. Brennan*, 578 U.S. 547, 554 (2016). Plaintiffs allege that the burden on their religious exercise stems from the construction and future operation of the Project—not merely from its approval or their early objections—and that this religious burden did not arise until 2023 or later, when the Corps confirmed its intent to proceed and began taking concrete steps toward construction, including finalizing design plans and awarding contracts, with a more realistic time of injury closer to when the plans were finalized and initial construction contracts were let in 2024. *See* [DE 21] at ¶¶ 14, 53, 122, 157–164. Plaintiffs' allegations plausibly support the conclusion that the claim accrued within the four-year limitations period and therefore is not time-barred at this stage.

As with Count I, the Court cannot resolve factual disputes about the timing of Plaintiffs' injury on a motion to dismiss. Plaintiffs' allegations—taken as true—do not show that the statute of limitations expired on the face of the complaint. *See Jones*, 549 U.S. at 215 (explaining that dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate only when an affirmative defense such as a statute of limitations is apparent on the face of the complaint).

Accordingly, the Court denies the Motion for Partial Dismiss as to Count III on statute of limitations grounds.

### C. *Count III – Failure to State a Claim under RFRA*

Defendants argue that Count III should be dismissed because Plaintiffs fail to allege any government action that imposes a substantial burden on their religious exercise. Defendants contend that Plaintiffs' RFRA claim rests solely on indirect impacts—such as noise, vibration, and aesthetic disruption—resulting from construction on adjacent land. In Defendants' view, such incidental effects do not amount to a substantial burden because the government is not coercing Plaintiffs to violate their religious beliefs or penalizing them for exercising those beliefs. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988) (holding that federal land use decisions, even those with severe adverse effects on religious practice, do not substantially burden religion absent government coercion or denial of benefits).

Plaintiffs respond that the RFRA does not require coercion or denial of benefits to state a claim. Plaintiffs cite *Thai Meditation Association of Alabama, Inc. v. City of Mobile*, 980 F.3d 821 (11th Cir. 2020), in which the Eleventh Circuit held that government action can impose a substantial burden when it pressures religious adherents to modify their behavior or deprives them of meaningful opportunities for religious exercise. Plaintiffs allege that the Project disrupts the quiet, harmony, and natural environment essential to their Buddhist worship and damages the outdoor spaces and artifacts they use for spiritual purposes. Plaintiffs also invoke *Thai Meditation*'s multi-factor test and assert that SGI-USA used the FNCC property for decades exclusively for the exercise of their Buddhist religion, repeatedly raised concerns with the Corps that the C-11 Impoundment project will create noise, air quality, odors, and aesthetic obstacles to their ability to exercise their religion at their property, and relied on assurances from the Corps

9

that never materialized. Plaintiffs argue that these allegations satisfy the standard for pleading a substantial burden on religious practices.

The Court finds that Plaintiffs adequately allege a substantial burden on their religious exercise sufficient to survive a motion to dismiss. The RFRA prohibits the government from substantially burdening a person's exercise of religion unless the burden satisfies strict scrutiny. The Eleventh Circuit interprets substantial burden broadly to include not just formal coercion, but also government pressure that leads adherents to compromise or abandon their religious practices. *See id.*; *see also Thai Meditation II*, 83 F.4th 922, 927 (11th Cir. 2023) (reaffirming that a substantial burden can arise from indirect government action that frustrates religious use of property, even without formal coercion or denial of benefits). Plaintiffs allege that SGI-USA's Buddhist practices depend on quiet, contemplative use of the FNCC's outdoor environment, and that the Corps' planned construction—including blasting, prolonged noise, and vibration from a seven-story pump station—will fundamentally and significantly disrupt that religious use. *See* [DE 21] at ¶¶ 6, 27, 71, 118, 122, 157–164. Accepting these allegations as true, Plaintiffs have plausibly stated a claim that government action substantially burdens their religious exercise within the meaning of the RFRA.

Defendants rely on *Lyng*, 485 U.S. at 449, to argue that the Corps is not burdening Plaintiffs' exercise of religion. However, *Lyng* dealt how government activity on its own property impacted the plaintiffs' use of that same federal property to practice their religion, and *Lyng* predated RFRA's enactment. The RFRA codified a broader definition of religious exercise, including "the use, building, or conversion of real property for the purpose of religious exercise." *See* 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(B). Unlike in *Lyng*, Plaintiffs here allege that government conduct burdens their religious use of their privately owned property that has long

been devoted exclusively to religious purposes. Plaintiffs further allege that they raised religious concerns for years and relied on the Corps' assurances that never materialized—facts that, under *Thai Meditation's* multi-factor framework, plausibly support a substantial burden on their religious exercise. At this stage, the Court must accept Plaintiffs' well-pleaded allegations as true.

Accordingly, the Court denies the Motion for Partial Dismissal as to Count III for failure to state a claim under the RFRA.

D. *Counts I and III – Laches*

Defendants also argue that the equitable doctrine of laches bars Counts I and III due to Plaintiffs' alleged delay in bringing suit. Laches is an affirmative defense that requires the defendant to show (1) a delay in asserting a right or claim, (2) that the delay was not excusable, and (3) that there was undue prejudice to the party against whom the claim is asserted. *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015).

Defendants contend that Plaintiffs knew of the Project's approval and potential impacts as early as the 2012 ROD but waited until 2024 to file suit—after the Corps finalized plans, started construction, and spent significant time and resources on the Project. Defendants argue that Plaintiffs unreasonably delayed filing suit, undermined the Corps's ability to proceed efficiently with a long-planned public project, and caused prejudice to the Corps.

The Court declines to dismiss either count on the basis of laches at this stage. Whether a delay is inexcusable and whether it caused prejudice are fact-intensive inquiries that rarely lend themselves to resolution on a motion to dismiss—particularly where, as here, the complaint sufficiently alleges at the motion to dismiss stage that Plaintiffs filed these claims within the applicable limitations periods. *See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology*

*Enters., Int'l*, 533 F.3d 1287, 1320 (11th Cir. 2008) (noting the strong presumption of timeliness when a suit is filed within the statutory limitations period and explaining that defendants bear a heavy burden to establish laches in such cases).

Here, the face of the complaint does not establish that Plaintiffs inexcusably delayed in filing suit. Plaintiffs allege that their claims did not accrue until 2022 or later—when Congress funded the Project, the Corps finalized design plans, and the Corps issued a 2023 MFR stating its intent to proceed without further environmental review. *See* [DE 21] at ¶¶ 45, 53, 100. Plaintiffs also allege that SGI-USA remained in regular communication with the Corps since 2007, continuously raised concerns about religious and environmental impacts, and received assurances that their concerns would be addressed. *See id.* at ¶¶ 107. At this stage, the Court must accept those allegations as true.

Moreover, Plaintiffs attribute any delay to the Corps's own representations and conduct, which Plaintiffs reasonably viewed as efforts to resolve their concerns without litigation. Courts have held that when a defendant's conduct contributes to a plaintiff's delay in filing suit, laches may be inappropriate. *See Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (noting that equitable defenses such as laches must account for the defendant's own actions that caused the plaintiff's delay); *Carlo v. Gustafson*, 512 F. Supp. 833, 837 (D. Alaska 1981) (declining to apply laches where the defendant's alleged false assurance gave the plaintiff reason to delay bringing suit). Accepting Plaintiffs' allegations as true, the Court finds no basis to conclude that Plaintiffs unreasonably delayed or that any such delay was inexcusable.

Defendants also fail to show that any delay caused prejudice sufficient to justify dismissal at this stage. Although Defendants cite expenditures and project milestones dating back to 2012, Plaintiffs allege that any significant commitments—including funding, contract awards,

and finalized design—occurred only after 2022. *See* [DE 21] at ¶¶ 45, 109–114. In *Ecology Center of Louisiana, Inc. v. Coleman*, 515 F.2d 860, 867-69 (5th Cir. 1975)[1], the Fifth Circuit declined to find prejudice where agency spending occurred during early stages of the project and accounted only for a small portion of the project's estimated cost). At a minimum, the question of prejudice in this case turns on disputed facts inappropriate for resolution on a motion to dismiss.

For these reasons, the Court denies the Motion for Partial Dismissal on laches grounds.

### IV.   **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.   The Motion [DE 22] is hereby **DENIED** as set forth above.

2.   Defendant shall file its answer within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 28th day of July 2025.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of record

---

[1] Under *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court is bound by cases decided by the former Fifth Circuit before October 1, 1981.